United States District Court
Southern District of Texas

**ENTERED**

September 03, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: DIAMOND OFFSHORE DRILLING, INC., *et al.*, | § § § | Bankruptcy No. 20-32307 (DJR) (Jointly Administered) |
| Debtors | § | |
| | § | |
| KEVIN M. EPSTEIN, *United States Trustee*, | § § | Civil Action No. H-21-1380 |
| Appellant, | § § | |
| v. | § § | |
| DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] | § § | |
| | § § | |
| Appellees. | § | |

**MEMORANDUM AND ORDER**

Diamond Offshore Drilling, Inc. and 14 of its subsidiaries—(collectively, the "Debtors")—filed for Chapter 11 bankruptcy.  After the Debtors proposed a reorganization plan, the U.S. Trustee objected to the Plan's nondebtor exculpation clause.  The bankruptcy court overruled the objection and confirmed the Plan, and the Trustee timely appealed.  Based on the parties' briefs, the arguments of counsel, the record, and the applicable law, the court affirms the bankruptcy court and dismisses this appeal.  The reasons are explained below.

**I.      Background**

In April 2020,  the Debtors filed multiple petitions for Chapter 11 bankruptcy in the United

---

[1]   The Reorganized Debtors in the Chapter 11 cases are: Diamond Offshore Drilling, Inc.; Diamond Offshore International Limited; Diamond Offshore Finance Company; Diamond Offshore General, LLC (f/k/a Diamond Offshore General Company); Diamond Offshore, LLC (f/k/a Diamond Offshore Company); Diamond Offshore Drilling (UK) Limited; Diamond Offshore Services, LLC (f/k/a Diamond Offshore Services Company); Diamond Offshore Limited; Diamond Rig Investments Limited; Diamond Offshore Development Company; Diamond Offshore Management Company; Diamond Offshore (Brazil) L.L.C.; Diamond Offshore Holding, L.L.C.; Arethusa Off-Shore, LLC (f/k/a Arethusa Off-Shore Company); and Diamond Foreign Asset Company.

States Bankruptcy Court for the Southern District of Texas.  The bankruptcy court consolidated the cases for joint administration and designated them as complex.  (Docket Entry No. 4-1 at 236).

In February 2021, the Debtors proposed a second amended joint Chapter 11 reorganization plan, which included the following language:

E.    *Exculpation*

Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement and related prepetition transactions (including any draws under or Claims or Causes of Action related to the RCF Credit Agreement), the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, this Plan, the Plan Supplement, the New Warrants, or any transaction related to the Restructuring, any contract, instrument, release or other agreement or document created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan and the Confirmation Order.

The Exculpated Parties set forth above have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with applicable Law with respect to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

(*Id.* at 641).

The Plan defined the "Exculpated Parties" as follows:

90.    "Exculpated Parties" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Committee and its members; (d) the parties to the Plan Support Agreement; and (e) the Senior Notes Trustee (solely to the extent acting in the capacity as Disbursing Agent), and (f) with respect to each of the

> foregoing Persons in clauses (a) through (e), each of their current and former Affiliates; and (f) with respect to each of the foregoing Persons in clauses (a) through (f), such Person's predecessors, successors, assigns, subsidiaries, Affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, Representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such.

(*Id.* at 578–79).

The bankruptcy court set the Plan confirmation hearing for April 2021, and the Debtors served notice of that hearing on "holders of claims against and interests in the Debtors and parties-in-interest in the [bankruptcy cases.]"  (*Id.* at 249).  The Debtors also published a notice of the confirmation hearing, the voting deadline, the objections deadline, and the fact that the proposed plan "contains discharge, injunction, exculpation, and release provisions" in *The New York Times* on March 3, 2021, and *The Financial Times* on March 4, 2021.  (*Id.* at 328–32).

Shortly after sending the notices, the Debtors began soliciting votes on the Plan.  (*Id.* at 272–76; Docket Entry No. 1117-2, *In re Diamond Offshore Drilling, Inc.*, Bankruptcy Pet. No. 20-32307 (Bankr. S.D. Tex.)).  While the votes were being counted, the Trustee filed a limited objection to the Plan, arguing that the exculpation clause violated the Bankruptcy Code because it was a nonconsensual nondebtor exculpation, which the Fifth Circuit prohibited in *In re Pac. Lumber Co.*, 584 F.3d 229 (5th Cir. 2009).  (Docket Entry No. 4-1 at 264–70).  The Debtors and the Trustee then agreed to add the following sentence to the exculpation clause:

> The exculpatory provisions in the Plan and this Confirmation Order are limited to those exculpations that are not prohibited by *In re Pac. Lumber Co.*, 584 F.3d 229 (5th Cir 2009).

(*Id.* at 772–73).  The parties agreed that the bankruptcy court would retain jurisdiction to determine the scope and applicability of the exculpation clause with the added sentence.  (*Id.* at 773).

In early April 2021, the Debtors' solicitation agent reported to the bankruptcy court that roughly 89 percent of the eligible voters approved the Plan.  (*Id.* at 279).  Less than one week later,

the court held the confirmation hearing.  In response to the Debtors' presentation of the modified

exculpation clause, the bankruptcy judge stated:

> So let me give you some context.  So this is a concerted policy drive by the U.S. Trustee[s] all over the country. They are chipping away at what can be done in a plan. In my view it's incredibly inappropriate. I said so in *Southern Foods*. And the proposal now is to fix it by exactly what the US Trustee complained about what occurring in its objection.
>
> So if I read [the modified exculpation clause], I have no idea what [it] means anymore. So you are asking me to approve the exculpation provisions in all respects, to make them immediately effective so parties can rely on that. And then you come back with a take-away that I have no idea what it means. And again, I'm not trying to be difficult, we're going to find a way to work through this. I'm not about to say that that's what I will do. Not a chance will I ever say I'm going to approve something and then I'm going to back away from it. I'm either going to approve it or not.
>
> If you—if the Debtors and the U.S. Trustee want to agree to a statement, you all are free to agree to whatever it is you want to. I urge you not to, but if that's what you want to do, you're free to do it. But I won't make that finding. It will not be an order from me. Because I know what's going on and it will be used against me in the next case and it will continue on. And I'm going to put a stop to it. I said this in *Southern Foods*, I'm saying it again today, not going to do this on my watch.
>
> So however you'd like to proceed I'm happy to give you some time to confer. And again, we're going to find a way to work through it, because, again, there's been too much work that's been done by all of the professionals. I'm just not going to cheapen the process or cheapen the [P]lan by agreeing to what I know is going on with respect to a national policy drive. So however you'd like to think about, however, you'd like to proceed, I'm all ears.

(*Id.* at 773–74).  The Debtors decided to remove the added sentence and proceed to argument on

the Trustee's objection.  (*Id.* at 776).  Following argument, the bankruptcy judge overruled the

Trustee's objection, stating:

> With respect to the objection raised by the U.S. Trustee, I won't repeat it, but I'll bring forward the comments that I made in the *Southern Foods* confirmation hearing because I think they are equally applicable here. . . .
>
> But I do find that as [the Debtors' counsel] persuasively argued, that you cannot peel back . . . different parts of the [P]lan and evaluate them in a vacuum. This has been a concerted effort by a large number of participants to reach a consensus in a difficult case, in a difficult industry and challenging times. And I think that the releases and exculpations that are contained within the [P]lan represent good faith negotiations, they represent the exercise of prudent business judgment, they are appropriate[ly] tailored in scope in order to achieve

the ongoing success of the Debtor[s] and the reorganized Debtor[s,] which is what this case should be focused primarily on.

With that I will overrule the objection, [and] I will confirm the Debtors' second amended [P]lan.

(*Id.* at 793–95).

The bankruptcy court entered its findings of fact and conclusions of law that day.  (Docket Entry No. 1231, *In re Diamond Offshore Drilling, Inc.*, Bankruptcy Pet. No. 20-32307 (Bankr. S.D. Tex.)).   The court found the exculpation clause "essential to the Plan, appropriate under applicable law, and . . . a proper exercise of the Debtors' business judgment."  (Docket Entry No. 4-1 at 513).  The court found and concluded that:

the exculpation provisions were proposed in good faith, were formulated following extensive, good faith, arm's-length negotiations with key constituents, and are appropriately limited in scope to achieve the overall purpose of the Plan.  Each Exculpated Party made significant contributions to the Chapter 11 Cases, including with respect to the negotiation and implementation of the Restructuring embodied in the Plan. The exculpation provisions do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The record in the Chapter 11 Cases fully supports the exculpation provisions, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation arising from their participation in the Chapter 11 Cases and the Debtors' restructuring and are consistent with the Bankruptcy Code and applicable law.

(*Id.* at 513–14).

The Trustee timely appealed the bankruptcy court's order.  (Docket Entry No. 1).  The court held argument on the appeal.

## II.    The Legal Standard

"[T]raditional appellate standards" apply to a district court's review of a bankruptcy court's order under 28 U.S.C. § 158(a).  *Stern v. Marshall*, 564 U.S. 462, 475 (2011).  This court reviews the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *See, e.g.*, *In re Ahern Enters., Inc.*, 507 F.3d 817, 820 (5th Cir. 2007); *In re Barron*, 325 F.3d 690,

692 (5th Cir. 2003); *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003).

## III.  Analysis

The Trustee argues that the Plan violates the Bankruptcy Code because it contains a nonconsensual nondebtor exculpation clause.  Bankruptcy courts may approve nondebtor releases under certain circumstances, as well as plans modifying relationships between creditors and nondebtor third parties.  *See* 11 U.S.C. §§ 105(a), 1123(b)(5), 1129(a)(1); *United States v. Energy Res. Co. Inc.*, 495 U.S. 545, 549 (1990).

"There is a circuit split as to the scope of a bankruptcy court's power to approve a release of creditors against a nondebtor."  *In re CJ Holding Co.*, 597 B.R. 597, 607 (S.D. Tex. 2019) (citing *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1061–62 (5th Cir. 2012)).  The Fourth, Sixth, Seventh, Ninth, and Eleventh Circuits have found that bankruptcy courts may release claims against nondebtors in some circumstances, even if the release is not consensual.  *See Blixseth v. Credit Suisse*, 961 F.3d 1074, 1085 (9th Cir. 2020), *cert. denied,* 141 S. Ct. 1394 (2021); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1079 (11th Cir. 2015); *In re Nat'l Heritage Found., Inc. v. Highbourne Found.*, 760 F.3d 344, 347 (4th Cir. 2014); *In re Dow Corning Corp.*, 280 F.3d 648, 658–61 (6th Cir. 2002); *In re Specialty Equip. Cos.*, 3 F.3d 1043, 1044–49 (7th Cir. 1993). In *Dow Corning*, the Sixth Circuit explained that "the bankruptcy court, as a forum for resolving large and complex mass litigations, has substantial power to reorder creditor-debtor relations needed to achieve a successful reorganization."  280 F.3d at 655.

The Fifth Circuit has concluded that a bankruptcy court may not confirm a plan that provides a "non-consensual non-debtor release," *In re Vitro*, 701 F.3d at 1061–62 (citing *Pac. Lumber*, 584 F.3d at 251), but a bankruptcy court may approve a consensual nondebtor release. Bankruptcy courts within the Fifth Circuit commonly approve nonparty releases based on agreed plans.  *See, e.g.*, *In re Bigler LP*, 442 B.R. 537, 543–44 (Bankr. S.D. Tex. 2010); *In re Camp*

*Arrowhead, Ltd.*, 451 B.R. 678, 701–02 (Bankr. W.D. Tex. 2011); *In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 775–76 (Bankr. N.D. Tex. 2007); *In re Pilgrim's Pride Corp.*, No. 08-45664-DML-11, 2010 WL 200000, at *5 (Bankr. N.D. Tex. Jan. 14, 2010).  The threshold issue is whether the exculpation clause was consensual.

"Although the Fifth Circuit treats a nonconsensual third-party release differently from a consensual one, it has not explained what 'consensual' means in this context." *CJ Holding*, 597 B.R. at 608.  "The Fifth Circuit has treated a claimant as nonconsenting because, besides not voting for the plan, she directly challenged it before it became final." *Id.* at 608 (citing *Pac. Lumber*, 584 F.3d at 236–39 (5th Cir. 2009)). "If a claimant votes in favor of the plan and receives consideration in exchange for a third-party release integral to it, that act is treated as consenting to the bankruptcy court's jurisdiction to approve the third-party release." *Id.* at 608–09 (citing *In re Bigler LP*, 442 B.R. at 546).  A claimant is treated as consenting if:  the claimant received notice of the bankruptcy proceeding, the claim-filing deadline, the proposed reorganization plan, and the hearing date; the claimant "ha[d] the opportunity to participate in the plan-confirmation hearing and to raise objections before the bankruptcy court"; and the claimant neither participated in the hearing nor objected in the bankruptcy court.  *Id.* at 609–610.

The Trustee argues that the claimants did not consent to the third-party exculpation clause because it is insufficiently clear what entities are exculpated, who is releasing those entities, and what claims are released.  In *CJ Holding*, this court rejected the argument that a claimant had not consented to a nondebtor release in a Chapter 11 reorganization plan because the plan was "long and full of complicated legal terms."  *Id.* at 610.  Construing the argument as attacking the sufficiency of the debtors' notice, the court applied the recognized standard that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.* (quoting *Mullane v.*

*Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15 (1950)).  Because the claimant received notice of the plan, including the nondebtor release, and "[n]either the Supreme Court nor the Fifth Circuit requires a debtor or a bankruptcy court to help creditors understand a proposed plan," the court concluded that the complexity of the reorganization plan did not make the plan or the nondebtor release nonconsensual.  *Id.*  The facts and reasoning of *CJ Holding* apply here.

The record shows that the Debtors sent notices to interested entities stating that the Plan had been filed and providing the voting deadline, the objections deadline, and the date of the confirmation hearing.  (Docket Entry No. 4-1 at 249–51, 333–38). The notices included "Important Information Regarding the Discharges, Injunctions, Exculpations, and Releases," which listed the third-party releases, exculpation, and related injunctions. (*Id.* at 256–60). Voting creditors received physical copies of the Plan.  Nonvoting creditors received notice that included a website link and a phone number that they could use to get copies of the Plan.  In addition to sending the notices, the Debtors published notice of the confirmation hearing, the voting deadline, the objections deadline, and the fact that the proposed Plan "contains discharge, injunction, exculpation, and release provisions."  (*Id.* at 328–32).  The notices ran in *The Financial Times* and *The New York Times*.  (*Id.*).  Interested entities received notice of the Plan, including the exculpation clause.

The Trustee argues that the notice was inadequate because it does not identify by name all the exculpated entities.  The Plan defined the "Exculpated Parties" not by name but as six categories of entities defined in the Plan and attached documents: the Debtors; the Reorganized Debtors; the Committee and its members; the parties to the Plan Support Agreement; the Senior Notes Trustee (solely to the extent acting in the capacity as Disbursing Agent); and their related entities and individuals, including their affiliates, predecessors, successors, assigns, subsidiaries, officers, principals, members, employees, and agents.  (Docket Entry No. 4-1 at 578–79).  Those entities are more specifically identified in other parts of the Plan and in filings in the bankruptcy

court that were provided as part of the Plan confirmation.  (*See, e.g.*, Docket Entry No. 4-1 at 569, 578–79, 591 (defining "the Debtors," the "Reorganized Debtors," and the "Senior Notes Trustee"); *id.* at 574, 585 (defining "the Committee" and the "Plan Support Agreement" by citing to filings in the bankruptcy court); Docket Entry No. 588, *In re Diamond Offshore Drilling, Inc.*, Bankruptcy Pet. No. 20-32307 (Bankr. S.D. Tex.) (listing the committee members); Docket Entry No. 854-1 at 41–68, *In re Diamond Offshore Drilling, Inc.*, Bankruptcy Pet. No. 20-32307 (Bankr. S.D. Tex.) (listing the parties to the Plan Support Agreement)).  The exculpation clause is clear: if an individual or entity was not involved in the "formulation, preparation, dissemination, negotiation, or [f]iling" of pre- or post-petition agreements and transactions or other specified bankruptcy negotiations and proceedings, then the exculpation clause does not apply.  The complexity of the exculpation clause in allowing all the exculpated entities to be easily identified by name is not a basis for concluding that the exculpation clause was nonconsensual.

The Trustee argues that the notice was inadequate because it did not name who is releasing the exculpated parties.  The Trustee did not raise this argument in the bankruptcy court.  (*See* Docket Entry No. 1176, *In re Diamond Offshore Drilling, Inc.*, Bankruptcy Pet. No. 20-32307 (Bankr. S.D. Tex.) (the Trustee's limited objection to the Plan)).  The argument is therefore waived.  *See In re Am. Hous. Found.*, 785 F.3d 143, 159 (5th Cir. 2015), *as revised* (June 8, 2015) ("[The appellant] has waived [the] argument by failing to sufficiently raise it before the bankruptcy court."); *In re IFS Fin. Corp.*, 803 F.3d 195, 204 n.13 (5th Cir. 2015) ("Neither this court nor a district court will review an issue presented for the first time on appeal of a bankruptcy court's decision." (quoting *In re Galaz,* 480 F. App'x 790, 792 (5th Cir. 2012))).

Even if the Trustee did not waive the argument, it fails.  The Plan does not identify the exculpating entities by name, but rather by the type of claim they would give up.  The exculpation clause immunizes the exculpated entities from claims by the creditors and other exculpated entities

related to their involvement in the bankruptcy proceedings to formulate, prepare, disseminate, negotiate, or file the pre- or post-petition agreements or transactions or in other bankruptcy negotiations and proceedings leading to the Plan confirmation.  After the Plan was confirmed, no creditor or exculpated entity could sue another exculpated entity based on that entity's conduct related to the bankruptcy proceedings, unless that entity committed willful misconduct, gross negligence, or actual fraud.  The lack of a list or specific description identifying the exculpating entities is not a basis for concluding that the exculpation clause was nonconsensual.

The Trustee also argues that the exculpation clause was nonconsensual because the Debtors did not provide interested parties or entities with a way to opt in or out of it, which violated the bankruptcy court's local rules for complex Chapter 11 cases.  The Trustee bases his argument on the following local rule:

> 40. If a proposed plan seeks consensual pre- or post-petition releases with respect to claims that creditors may hold against non-debtor parties, then a ballot must be sent to creditors entitled to vote on the proposed plan and notices must be sent to non-voting creditors and parties-in-interest. The ballot and the notice must inform the creditors of such releases and provide a box to check to indicate assent or opposition to such consensual releases together with a method for returning the ballot or notice.

Proc. for Complex Chapter 11 Cases in U.S. Bankr. S.D. Tex. (2021).

The Trustee did not raise this argument in the bankruptcy court.  (*See* Docket Entry No. 1176, *In re Diamond Offshore Drilling, Inc.*, Bankruptcy Pet. No. 20-32307 (Bankr. S.D. Tex.) (the Trustee's limited objection to the Plan)).  The argument is therefore waived.  *See Am. Hous. Found.*, 785 F.3d at 159; *IFS Fin. Corp.*, 803 F.3d at 204 n.13.  Even if the Trustee did not waive the argument, it fails.  A local rule is "equivalent to a court order."  *Campbell v. Wilkinson*, 988 F.3d 798, 800 (5th Cir. 2021) (quotation marks omitted).  A court's "administrative handling of a case, including its enforcement of the local rules," is reviewed "for abuse of discretion."

10

*United States v. Rios-Espinoza*, 591 F.3d 758, 760–61 (5th Cir. 2009) (quoting *Macklin v. City of New Orleans*, 293 F.3d 237, 240 (5th Cir. 2002)).

In *Rios-Espinoza*, the Fifth Circuit held that the district court did not abuse its discretion by refusing to strike a notice that did not comply with a local rule, because the local rules did not require the court to strike the noncompliant notice. *Id.* at 761. The local rules for complex Chapter 11 cases do not state that noncompliance with a rule invalidates a bankruptcy court's confirmation of a reorganization plan. The Trustee does not identify legal authority supporting the proposition that the consequence of the Debtors' failure to have a box to check to opt in or opt out of the exculpation clause is to reverse or vacate the bankruptcy court's order. No party cited a case requiring opt-in or opt-out checkboxes to make a nondebtor exculpation clause consensual. The bankruptcy court did not abuse its discretion by confirming the Plan despite a lack of opt-out or opt-in checkboxes for the exculpation clause in the notices. The notices advised interested parties on how to object to the Plan. No party, save the Trustee, objected to the exculpation clause. The Trustee's argument, if not waived, is unpersuasive.

There were over 3,000 votes on the Plan. (Docket Entry No. 4-1 at 279). Besides the Trustee, only one entity objected. That objection did not relate to the exculpation clause, and it was withdrawn. (*Id.* at 770; Docket Entry Nos. 1175, 1181, *In re Diamond Offshore Drilling, Inc.*, Bankruptcy Pet. No. 20-32307 (Bankr. S.D. Tex.)). One objection, unrelated to the issue presented in this appeal and later withdrawn, among several thousand votes, undercuts the Trustee's argument that the exculpation clause was nonconsensual. No interested party or entity has joined the Trustee's appeal or appealed the bankruptcy court's confirmation of the Plan.

The Trustee does not argue that any interested party or entity lacked counsel, that the Debtors or the Plan were intentionally misleading, or that the Debtors acted in bad faith. The interested parties and entities received adequate notice of the Plan and its exculpation clause, how

to object, and the date of the confirmation hearing.  The exculpation clause and Plan are complex, but that does not make a failure to object a basis to undermine a Plan provision as nonconsensual.

The bankruptcy court found that the releases were necessary to resolve a complex and difficult case in a complex and difficult industry.  The court found that that the negotiations resulting in the Plan, including the exculpation clause, were in good faith; did not release claims for fraud, intentional misconduct, or gross negligence; and were "tailored to protect the Exculpated Parties from inappropriate litigation arising from their participation in the Chapter 11 cases and the Debtors' restructuring."  (Docket Entry No. 4-1 at 514).  The record supports the bankruptcy court's finding.  The record shows that the exculpation clause was essential to the Plan terms that were confirmed.  Some plan may have been confirmed without the exculpation clause, but the record shows that it would have been one of far less value to the Debtors and the creditors.  In his declaration, David L. Roland, Diamond Offshore Drilling. Inc.'s senior vice president, general counsel, and secretary, states that the exculpated entities gave "critical support and cooperation" throughout the bankruptcy proceedings and that they "were integral participants or funding sources."  (Docket Entry No. 1202 at ¶¶ 26–27, *In re Diamond Offshore Drilling, Inc.*, Bankruptcy Pet. No. 20-32307 (Bankr. S.D. Tex.)).  The exculpated entities contributed to the formulation and confirmation of this complex Plan, which garnered only one non-Trustee objection unrelated to the exculpation clause.

The Plan's nondebtor exculpation clause was consensual. The concerns that the Trustee highlights based on the Fifth Circuit's cases on nonconsensual nondebtor exculpation clauses do not apply, and the exculpation clause in this case does not violate the Bankruptcy Code.

The Debtors argue that, even if the Plan's exculpation clause was nonconsensual, the bankruptcy court still did not err by approving it.  The Debtors argue that the Fifth Circuit's conclusion in *Pac. Lumber* that 11 U.S.C. § 524(e) prohibits nonconsensual nondebtor exculpation

clauses allows bankruptcy courts to approve this type of clause under other Bankruptcy Code provisions. This argument "pit[s] the equitable power of the bankruptcy court, as codified in § 105(a) of the Bankruptcy Code . . . against § 524(e)." Eric W. Anderson & Jay Basham, *Please Release Me, Let Me Go: Eleventh Circuit Embraces Third-Party Release Standards*, 34-JUN AM. BANKR. INST. J. 20, 20 (June 2015); Ryan M. Murphy, *Shelter from the Storm: Examining Chapter 11 Plan Releases for Directors, Officers, Committee Members, and Estate Professionals*, 20 J. BANKR. L. & PRAC. 4 ART. 7, (2011) ("The crux of the debate over the permissibility of nondebtor releases centers around the apparent statutory conflict between section 105(a) and section 524(e) of the Bankruptcy Code.").

Section 105(a) authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). Section 524(e) states that "discharge of a debt of the debtor does not affect the liability of any entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). "Neither § 105(a), nor any other Code provision, expressly authorizes nonconsensual, nondebtor releases. Nor, however, does § 524(e), on its face, forbid such releases." Anderson & Basham, *Please Release Me*, 34-JUN AM. BANKR. INST. J. at 20 (footnotes omitted).

"Courts, scholars, and practitioners disagree over the propriety of non-consensual third-party releases." Betsy L. Feldman, *Bankruptcy Can Establish True Peace: The Importance of Non-Consensual Third-Party Releases in Purdue Pharma's Chapter 11 Case*, 30 NO. 4 J. BANKR. L. & PRAC. NL ART. 4 (2021). A majority of the circuits—the First, Second, Third, Fourth, Sixth, Seventh, Ninth, and D.C. Circuits—interpret the Bankruptcy Code as authorizing bankruptcy courts to approve nonconsensual nondebtor releases in certain circumstances. *See id.*; Anderson & Basham, *Please Release Me*, 34-JUN AM. BANKR. INST. J. at 20 n.2; *Blixseth*, 961 F.3d at 1085; Robert J. Keach & Lindsay Zahradka Milne, *Persuasive Authority: Compelled Third-Party*

*Releases*, 37-DEC AM. BANKR. INST. J. 14, 108 (December 2018) (discussing the circuit split). The Fifth Circuit is in the minority that has "concluded that the bankruptcy courts lack this authority." Anderson & Basham, *Please Release Me*, 34-JUN AM. BANKR. INST. J. at 20 (footnote omitted); Keach & Milne, *Persuasive Authority*, 37-DEC AM. BANKR. INST. J. at 108; *In re Vitro*, 701 F.3d at 1062 (the Fifth Circuit "has firmly pronounced its opposition to [nonconsensual nondebtor] releases"); *Pac. Lumber*, 584 F.3d at 252 (Fifth Circuit caselaw "seem[s] broadly to foreclose non-consensual non-debtor releases" and the Fifth Circuit declines to "adopt a more lenient approach to non-debtor releases taken by other courts").

The court's finding that the clause at issue was consensual makes it unnecessary to decide the limits of the Fifth Circuit case law on nonconsensual exculpation clauses. The Fifth Circuit in *Pac. Lumber* interpreted § 524(e) as prohibiting nonconsensual nondebtor exculpation clauses that include individuals and entities beyond the creditors' committee members. 584 F.3d at 251–53. There are limited exceptions to the Fifth Circuit's prohibition, but the court need not decide if any apply in this case. *See, e.g.*, *In re Vitro*, 701 F.3d at 1062 ("although [the Fifth Circuit] has firmly pronounced its opposition to [nonconsensual nondebtor] releases, relief is not thereby precluded under [11 U.S.C.] § 1507, which was intended to provide relief not otherwise available under the Bankruptcy Code or United States law"); *Pac. Lumber*, 584 F.3d at 253 (nonconsensual nondebtor exculpation clauses are allowed as to members of creditors' committees because 11 U.S.C. § 1103(c) "implies [that] committee members have qualified immunity for actions within the scope of their duties"); *In re Bigler*, 442 B.R. at 543 (a bankruptcy court may approve nonconsensual nondebtor exculpation clauses as part of a claims settlement under 11 U.S.C. § 1123(b)(3)(A) if the Bankruptcy Code's settlement requirements are satisfied). The record supports finding that the exculpation clause the Trustee challenges was consensual. The bankruptcy court did not err in overruling the Trustee's objection.

**IV.     Conclusion**

The bankruptcy court's order overruling the Trustee's objection and approving the Debtors' Chapter 11 reorganization plan is affirmed.  This appeal is dismissed.

SIGNED on September 3, 2021, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge